J. CURTIS EDMONDSON, Bar # 236105
LAW OFFICES OF J. CURTIS EDMONDSON
3699 NE JOHN OLSEN AVE.
HILLSBORO, OR 97124
TELEPHONE: (503) 336-3749
FAX: (503) 482-7418

Attorney for Plaintiffs FREAR STEPHEN SCHMID
AND ASTRID SCHMID

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREAR STEPHEN SCHMID AND ASTRID SCHMID <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF SONOMA <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF CIVIL RIGHTS AND FOR RELIEF UNDER C.C.P. §1094.5** <br> **[Jury Trial Demanded]** |

Plaintiffs, FREAR STEPHEN SCHMID and ASTRID SCHMID allege as follows:

## JURISDICTION AND VENUE

1.  This action arises out of violations of plaintiffs' civil rights under 42 U.S.C. §1983. Jurisdiction is proper under 28 U.S.C. §1357, and supplemental jurisdiction is proper under 28 U.S.C. §1367. This court is the proper venue for this action pursuant to 28 U.S.C. §1391(b) in that defendant resides in this judicial district and all of the events or omissions giving rise to

1

COMPLAINT

the claim occurred within this judicial district. Per Local Rule 3-2(c), this case should be assigned to San Francisco or Oakland, as the claims arise out of Sonoma County.

## PARTIES

2.   Plaintiffs are FREAR STEPHEN SCHMID and ASTRID SCHMID residents of the County of Sonoma, California.

3.   Defendant, County of Sonoma (hereinafter "County"), is political subdivision of the State of California, and is a person within the meaning of 42 U.S.C. §1983.

## COUNT 1

## [Violation of 42 U.S.C. §1983]

4.   At all times relevant hereto, plaintiffs were in the peaceable and rightful possession of and owners of approximately 61 acres of land, which included their place of residence and inter alia an agricultural barn, originally built in or about 1948.  Said parcel is located in the unincorporated area of the County of Sonoma, California.

5.   In June, 2018, defendant County acting through its Permits and Resource Department (PMRD), posted a notice on plaintiffs' property regarding an "AG Barn", alleging unpermitted work in 2000. Plaintiffs promptly contacted and met PMRD personnel and were advised they could seek an  agricultural building exemption permit for the pre-existing agricultural barn, under Sonoma County Building Code section 7-7. Said section provides:

> "Sec. 7-7. - Agricultural exemption permit requirements.
> (a)
> At the applicant's option, the provisions of Section 7-5
> requiring building permits may be exempted for buildings,
> or repairs, alterations, additions, or remodels to buildings
> designed and constructed for use in housing farm machinery,
> animals, supplies or products that are harvested from or utilized
> on a parcel of land. Buildings constructed pursuant to this section

2

COMPLAINT

shall, conform to all applicable codes and regulations and applicant shall obtain an exemption permit.

This agricultural exemption permit shall not apply to the following:

(1)

Any building, any part of which is within sixty (60) feet of a property line or other non-agricultural exempt building, regardless of the size of the parcel, except the distance to other buildings may be reduced to not less than forty (40) feet when allowed by building code requirements;

(2)

Any building which will or does contain waste plumbing. Electrical, mechanical and water systems may be installed in agricultural exempt buildings, however, permits for and inspections of these systems are required;

(3)

Any farm property less than five (5) acres. Farm property means all contiguous parcels. Parcels shall be considered as contiguous even if they are separated by roads;

(4)

Any building that is not an agricultural building as defined by Section 202 of the California Building Code;

(5)

Any building located on property with a land use zone other than LIA, LEA, DA RRD, RRDWA, AR TP or RR;

(6)

Property on which an agricultural use does not presently exist and for which no substantial evidence of future agricultural use is available. The chief building official's determination of the sufficiency of the evidence of current or future agricultural use shall be final;

(7)

Any building exceeding two (2) stories;

(8)

Any building constructed primarily of other than wood frame construction except for manufactured pre-engineered buildings;

(9)

Any wood frame building wherein spans of structural members exceed twenty-five (25) feet, unless the exemption request is accompanied by building plans prepared, stamped, and signed by a licensed civil or structural engineer or architect.

(b)

Prior to the erection, construction, conversion, enlargement or major alteration of any building or structure situated on agricultural land, or prior to the moving of any building or structure onto said land subject to exemption, a written application for the exemption shall be filed with the chief building official and shall contain:

3

COMPLAINT

(1)
A verified statement in writing signed by the owner of the agricultural land regarding each of the requirements contained in this section;

(2)
Description of the present use of the land;
(3)
Description of the building or structure to be exempted and its proposed use;
(4)
Name and address of the owner of the land and the assessor's parcel number. The applicant must be the owner;
(5)
An accurate dimensioned plot plan showing all buildings, structures, property lines, streets and roads and the means of access thereto;
(6)
Such further information as the chief building official may require;
(7)
Payment of the exemption fee.
(c)
The chief building official shall record a notice of agricultural exemption with the county recorder following issuance of an agricultural exemption. The notice shall contain:
(1)
The owner's name and the property address and assessor's parcel number;
(2)
The owner's description of the present agricultural use of the land;
(3)
A description, including use, of the building for which the exemption was issued;
(4)
The date of exemption issuance.
(d)
Unless otherwise authorized, the structure or repairs, alterations, additions, or remodels for which the exemption is approved must be completed within three (3) years of the date of the authorization for exemption. If the structure or repair, alteration, addition, or remodel is not completed within this time period, a new exemption must be applied for. When the structure or repairs, alterations, additions, or remodels is completed, an inspection must be performed by permit resource management division staff. The sole purpose of this inspection shall be to insure that the structure is complete and is being used for the use stated on the application for exemption.
(Ord. No. 5754, § 1(g), 2007; Ord. No. 5167, §§ 1(d), 1(e), 1999; Ord. No. 4906, § 3, 1995.)"

COMPLAINT

4

6.  In as much as plaintiffs' property unquestionably fit within the requirements of Section 7-7, on  June 28, 2018, plaintiffs completed and submitted an agricultural exempt permit application on the County's form (CNI-030) for repair work  to the pre-existing barn built in the late 1940's and shown on the tax assessor's rolls as a "hay barn" starting in the 1950's. The application explained the active agricultural use of the 61 plus acre property, including beef cattle, sheep, pigs, free range egg production chickens, and a rabbitry and further provided the proposed agricultural use of the barn. Inter alia,  they also submitted a photograph of the barn, see Exhibit A hereto.

7.  After multiple trips to PMRD, plaintiffs completed the ag exempt application process, received the necessary sign offs by all required PMRD division (zoning, building, well & septic, stormwater/drainage/grading, and code enforcement) and paid the required fees on July 16, 2018. Per the signed off application, all that remained for the approval of the exemption was a "building site evaluation." During the application process, plaintiffs were advised there would be such a site evaluation to confirm setbacks and to confirm that the property had an agricultural use, and that the property owner would be telephonically contacted to advise of the site evaluation date.

8.  Plaintiffs received a voice mail from Mr. Marquez of PMRD on August 2, 2018 advising he would be coming by later that morning to conduct the site visit. Plaintiff Frear Stephen Schmid unlocked the gate at the end of their driveway to allow access when Mr. Marquez showed up. Later in the morning, plaintiff Frear Stephen Schmid heard the dogs barking, and saw a County car, went out to the car, and the driver, Mr. Marquez, asked words to the effect if the dogs were ok or locked up, and Stephen said yes. Mr. Marquez then proceeded toopen the gate and drove to the barn without any further conversation with

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

appellants. A few minutes later the dogs barked again and plaintiff Frear Stephen Schmid saw the County car driving off down the driveway without any attempt by Mr. Marquez to make any contact with plaintiff.  At no time did he ask to access the interior of the barn, nor could he have seen into or accessed the barn without the aid of plaintiffs, as the barn was secured, locked shut and has no windows for him to view through.

9.  On August 6th, 2018, plaintiffs received a letter dated August 2, 2019 from PMRD by Mr. Paul Marquez advising that "Re Site Evaluation…After visiting the site, I have determined that the proposal does not meet the ordinance requirement due to vehicle storage other than farm, agricultural, and feed."

10.  By email dated August 7, 2018 plaintiffs addressed Mr. Marquez and pointed out that the vehicles (a tractor, a Circle J trailer, a box trailer, and a shortened mobile home chassis) were for agriculture purposes related to the agriculture use of the property, explaining in detail the agriculture use of each.

11.  In response, plaintiffs received an automated reply, advising Mr. Marquez was out until August 13th, 2018. On Aug. 13, 2018 Mr. Marquez emailed a substantive reply, advising he would return to "walk the site and the interior of the barn".

12.  Plaintiff Frear Stephen Schmid replied on August 14, 2018 advising he had been unavailable, but informed Mr. Marquez that the barn had existed since the 1940's and was on the tax rolls as an agricultural barn, and further advised that an interior inspection was not necessary nor appropriate under the ordinance/law, as had been confirmed to him [Frear Stephen Schmid] during the PMRD application process, and that plaintiffs would address the issue of an interior inspection with higher ups and did so by ccing the email to PMRD

COMPLAINT

Director Tennis Wick.

13.   On August 15, 2018, Director Wick emailed to plaintiffs: "If you let us in to inspect we can make call."

14.   Next communication was taken up between plaintiff Frear Stephen Schmid and Mr. Spaulding at PMRD. During a telephone conversation with him, Frear Stephen Schmid informed Mr. Spaulding that he could open the barn, but "all he will see is hay". Mr. Marquez made a second site visit, during which Frear Stephen Schmid opened the shut barn doors showing the barn stacked with hay stored in there to feed the beef cattle on the property. See Exhibit B hereto.

15.   Next, Mr. Quarles of PMRD emailed plaintiffs on September 6, 2018 demanding an interior inspection to which Frear Stephen Schmid replied on September 10, 2018 by pointing out that Mr. Quarles had failed to address "the elephant in the room"-nothing allowed or required  an interior inspection of the barn for issuance of the exempt permit and the demand was an invalid attempt to force appellants to surrender their Fourth Amendment rights and associated rights under California law.

16.   Thereafter, in an email exchange with Director Wick, plaintiffs pointed out PMRD's and his position was clearly at variance with PMRD policy # 4-0-5. See Exhibit C hereto-specifying the purpose of the "site evaluation" is "to determine" as relevant to the subject claims "setback" and "verify agricultural use of the property exists." Ultimately, Director Wick without elaboration, rejected plaintiffs' position, maintaining an interior inspection would be required prior to the issuance of the agricultural exempt permit.

17.  It is clear from the application, PMRD policy # 4-0-5 and the local ordinance, and the

COMPLAINT

size and use of plaintiffs' property and the necessary setbacks, that the plaintiffs fully complied with the ag exempt requirements, and the permit had to be issue and plaintiffs were legal entitled to it as a matter of law. The site inspections unequivocally proved the property and the barn's location thereon met and do meet the agriculture exempt requirements. As such, plaintiffs were and entitled to the issuance of the ag exemption permit as a matter of law. Nonetheless, the County refused the issuance of the exemption permit.

18.   Plaintiffs appealed the denial of the agriculture exemption permit to the County's Board of Buildings Appeal. Prior to the hearing before the Board, plaintiffs submitted a statement with attachments arguing that the plaintiffs were factually and legally entitled to the agriculture exemption permit, and that the County's attempt to condition the permit on the surrender of their Fourth Amendment Rights, and their associated rights under California law was legally incorrect and improper.

19.   At the hearing, plaintiffs argued that the County Building Code entitled the plaintiffs to an ag  exempt permit, as a matter of right, given that plaintiffs property use, size, and location of the barn complied to all of the County's Code conditions, and that all the County was entitled to was a site evaluation to establish the proper agricultural use of the property and the required set back for the barn site. Plaintiffs contended that the site evaluation conducted established the agricultural use of the property and the set backs.  Plaintiffs conceded and did not dispute that, after the issuance of the ag exempt permit, the County would be entitled at a time arranged with plaintiffs (but within the 3 years allowed by the Code) to perform an interior inspection for the purpose of conforming agriculture use of the barn as set forth above in the Sonoma Code,section 7-7(d). This procedure is consistent with normal permit process:

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1) one applies for a permit

2) the permit issues, and

3) there is an inspection or multiple inspections to

confirm compliance with the issued permit.


20.  At the hearing was had on the matter on November 15, 2018,  the Board of Building Appeal, towards the conclusion of the hearing,    "offered" plaintiffs a "compromise" conditioned on plaintiffs allowing an interior inspection of the barn, which plaintiffs rejected as making the permit improperly conditional on a surrender of constitutional rights.

21.  The hearing was conducted in a disorganized ad hoc fashion for presenting and rebutting evidence and submitting one's case and arguments.  The County interfered with and denied plaintiffs' right to cross-examine witnesses. The board  exhibited a lack of understanding of the applicable law and facts, such that plaintiffs were denied a fair hearing of competent impartial body and a meaningful opportunity to be heard

22.  Due to the way the hearing was conducted by the County, plaintiffs were denied their due process rights, due to the unfair, impartial, and biased manner and lack of meaningful opportunity to be heard in which the Board/ County conducted the meeting.

23.  At the conclusion of the hearing, the Board voted to deny plaintiffs appeal, i.e. upholding the withholding of the agriculture exemption permit. The County gave written notice of the decision by letter dated November 20, 2018 and a follow up corrective letter dated November 25, 2019. Subsequent proposals by plaintiffs with Director Wick to avoid this litigation was rejected by Director Wick, where he confirmed his adherence that issuance of the exemption be conditioned on an internal inspection of the barn.

COMPLAINT

24.  Said decision and denial of the exemption were and are unconstitutional, and in violation of plaintiffs' constitutional rights and were not based upon substantial evidence and  were contrary to the evidence and law presented.

25.  The decision entered was arbitrary and capricious.

26.  The decision and the activities of the County conditioning plaintiffs' right to the ag exempt permit on the interior inspection (search) of the barn is and was unconstitutional and violation of the Fourth Amendment (unreasonable searches) and due process of law and unless enjoined, the County will proceed unlawfully and unconstitutionally to continue to deny plaintiffs' right to the as exempt permit in violation of the Fourth Amendment and due process of law.

27.  By the foregoing acts, plaintiffs were deprived (or will be deprived unless enjoined) by the County of their constitutional rights as follows:

    a.  Their right of a meaningful opportunity to be heard by an impartial decision maker;

    b.  Their Fourteenth Amendment rights to not be denied liberty and property (including entitlement to the exemption permit) without due process of the law, including their right not to be subjected to arbitrary and capricious use of governmental authority and regulation; and

    c.  Their Fourth Amendment right against unreasonable searches.

28.  Further, plaintiffs were deprived by the County of the corresponding rights afforded them under the California Constitution and civil law including their right to have, own, hold and defend property, to be free of unreasonable searches and the right to privacy.

29.  The County's policy decision maker, Director of the PMRD, Tennis Wick, fostered, promoted, condoned, implemented and furthered the conduct and policy that the County

COMPLAINT

inflicted on and suffered by plaintiffs as above described, specifically unconstitutionally conditioning the agriculture exempt permit on plaintiffs' surrendering their Fourth Amendment Rights.  In addition, the County ratified and approved the policy and acts, thereby making the acts of the County the official practice and policy of the County.

30.   As a direct and proximate result of the acts of the County, plaintiffs have suffered and seek nominal damages and are entitled to attorney due to the violation of 42 U.S.C. §1983.

31.   The County will continue to violate plaintiffs' constitutional rights, and accordingly, plaintiffs will suffer irreparable harm unless the County is enjoined from such illegal conduct.

## COUNT 2

### [Violation of California Rights]

32.  Plaintiffs incorporate and reallege as if set forth in whole, the allegations of paragraphs 1 through 31 above.

33.  The County has violated and will continue to violate plaintiffs' rights under California law, and accordingly, plaintiffs will suffer irreparable harm unless the County is enjoined from violating their rights inter alia under the California Constitution, Article I, Section 1.

## COUNT 3

### [Relief Under California Code of Civil Procedure §1094.5]

34.   Plaintiffs petition this Court for an order as hereinafter requested under Code of Civil Procedure §1094.5, directed to the County of Sonoma and by this verified complaint allege as follows:

35.  Plaintiffs incorporate and reallege as if set forth in whole, the allegations of paragraphs 1 through 33 above.

11

COMPLAINT

36.   Plaintiffs are beneficially interested in and aggrieved by the County's wrongful and unconstitutional conduct as alleged herein.

37.   At all times mentioned herein, defendant County has been and is now the entity charged with administering the Sonoma County Code.

38.   On or about November 15, 2018, the County's Board of Building Appeal conducted the hearing alleged above.  At the conclusion of said hearing, the Board voted to deny plaintiffs' appeal of the County's denied of the agriculture exemption permit. Thereafter, on November 20, 2018, plaintiffs were mailed written notice of the Board decision.

39.   Said decision and action by the County through its Board of Building Appeals and the PMRD are invalid under Code of Civil Procedure §1094.5, for the following reasons:

> a. Defendant proceeded in excess of its jurisdiction, in that it made erroneous determinations of law, facts and acted in violation of plaintiffs' constitutional rights, civil rights, and rights to an agriculture exemption permit.

> b.  Defendant failed to grant plaintiffs a fair meaningful hearing as set forth above.

> c. Defendant committed a prejudicial abuse of discretion in that it misinterpreted and/or misapplied the County ordinance, and failed to properly apply the law to the facts, and violated plaintiffs' constitutional rights as set forth above.

> d. Defendant failed to proceed in the manner required by law because it issued the decision contrary to the substantial evidence and law before them and failed to afford plaintiffs due process as set forth above.

> e. Defendant's decision is not supported by substantial evidence and contrary to law.

> f. Defendant proceeded in excess of its jurisdiction and prejudicially abused its discretion by failing to proceed in the manner required by law as alleged above.

12

COMPLAINT

40.  Fundamental vested rights are involved in that plaintiffs' fundamental right to use their property are at stake.

41.  Plaintiffs have exhausted their available administrative remedies.

42.  Plaintiffs do not have a plain, speedy, and adequate remedy in the ordinary course of law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray judgment against defendant as follows:

1.  Nominal damages as against the County for violation of plaintiffs' civil rights under 42 U.S.C. §1983 (first claim);

2.  An order, under Code of Civil Procedure §1094.5, directed to defendant and compelling defendant to set aside the decision at the hearing of November 15, 2018 and denial of the agricultural exempt permit, directing the appeal be granted and directing that the County issue the agriculture exempt permit;

3.  An injunction issue directed to defendant and compelling defendant to set aside its decision of the hearing of November 15, 2018 and directing the plaintiffs appeal be granted and that plaintiffs be issued an agriculture exempt permit;

4.  Costs, interest and attorney fees allowable for violation of 42 U.S.C. §1983; and

5.  Such other relief be granted that the court considers proper and just.

DATED: February 18, 2019

/s/_J. Curtis Edmondson
J. Curtis Edmondson
 Attorney for Plaintiffs
FREAR STEPHEN SCHMID AND
ASTRID SCHMID

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **VERIFICATION**

I, FREAR STEPHEN SCHMID, I am plaintiff in this proceeding.  I have read the foregoing pleading and believe the facts alleged therein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on February 18, 2019, at Petaluma, California.

Frear Stephen Schmid

COMPLAINT

1

2

## **<u>JURY TRIAL DEMAND</u>**

3

4

5
　　　　Plaintiffs demand a jury trial in the above matter.

6

7
DATED: February 18, 2019

8

9

10

11
　　　　　　　　　　　　　　　　　　　/s/J. Curtis Edmondson

12
　　　　　　　　　　　　　　　　　　　J Curtis Edmondson, Attorney for
　　　　　　　　　　　　　　　　　　　FREAR STEPHEN SCHMID AND

13
　　　　　　　　　　　　　　　　　　　ASTRID SCHMID

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

COMPLAINT

# EXHIBIT A

COMPLAINT



1

# EXHIBIT B

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Rob Spaulding, CBO, CASp

**Building and Safety Division Manager**
www.PermitSonoma.org
County of Sonoma
Building Division
2550 Ventura Avenue, Santa Rosa, CA 95403
Direct: 707-565-1234 | Office: 707-565-3723



*OFFICE HOURS*: Permit Sonoma's public lobby is open Monday through Friday
from 8:00 AM to 4:00 PM, except Wednesdays, open from 10:30 AM to 4:00 PM.

THIS EMAIL ORIGINATED OUTSIDE OF THE SONOMA COUNTY EMAIL SYSTEM.



# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

*Permit and Resource Management Department*
**POLICY AND PROCEDURE**                                    Number 4-0-5

will determine when fire inspections are required for access and water. The cashier will route the remainder of the submittal package to site evaluation.

D.  Site Evaluation

Site evaluation staff conducts a review in the field to determine the following:

1.  *Flood hazard zone.* Agricultural exempt buildings are not allowed in a flood hazard zone.
2.  *Soil stability.* If a geotechnical report is required, an agricultural exemption cannot be approved until the report is submitted and approved.
3.  *Setback requirements.* Verify that the proposed building conforms to setback requirements.
4.  *Agricultural use.* Verify that an agricultural use exists on the property. If the agricultural use cannot be established on the property until after the agricultural building is constructed (i.e., can't place the horses on the property without a building to house the feed, etc.), the Department will accept evidence of the agricultural use. A letter from the property owner is acceptable.

The site evaluation checklist form is completed. If the property is located within a flood hazard zone, the property owner will be notified by letter that the exemption is denied. If it is determined that a grading permit or a geotechnical report is required, the property owner will be notified that a grading permit shall be obtained or a geotechnical report submitted prior to approval of the agricultural exemption.

If it is determined that the agricultural exemption can be approved, the *Notice of Agricultural Exemption* and the approval portion of the application are completed by inspection staff and the applicant is notified of the approval by letter. The site evaluation package is then routed back to the cashier. If it is determined that the agricultural exemption cannot be approved, inspection staff will also notify the applicant by letter of the basis for not approving the exemption.

F.  Building Inspection Office Assistant

Upon receipt of the approved submittal package, the appropriate Office Assistant completes the process in the following manner:

1.  Sends the Notice of Agricultural Exemption to the Recorder's Office.
2.  Retains the submittal package until the Notice returns from the Recorder's Office.
3.  Receives the recorded Notice from the Recorder's Office and distributes the submittal materials in the following manner:
    a.  White copy of application, recorded Notice and one copy of site plan to File Room.
    b.  Green copy of application and copy of site plan to Fire Inspector.

Ex. C