1
2
3
4
5

J. CURTIS EDMONDSON, Bar # 236105
LAW OFFICES OF J. CURTIS EDMONDSON
2660 SE 39th Loop Suite D
HILLSBORO, OR 97123
TELEPHONE: (503) 336-3749
FAX: (503) 482-7418

Attorney for Plaintiffs FREAR STEPHEN SCHMID
AND ASTRID SCHMID

6
7

8

# UNITED STATES DISTRICT COURT

9

## NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

FREAR STEPHEN SCHMID AND ASTRID
SCHMID

      Plaintiff(s),

      vs.

COUNTY OF SONOMA

      Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 3:19-cv-00883-JD


**PLAINTIFFS' OPPOSITION TO
SUMMARY JUDGMENT/SUMMARY
ADJUDICATION (ECF 27)**

Date:  May 28,2020
Time: 10:00
Ctrm: 11, 19th Floor

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

*I.*     *FACTS (The F. S. Schmid Declaration filed herewith verifies these facts)*.......................2

*II.*     *SUMMARY OF ARGUMENTS* ...........................................................6

*III.*     *ARGUMENT* ...................................................................................7

     **A.**    **The County Arbitrarily Violated And Flouted Its Ordinance**..................7

     **B.**    **The County Violated The Unconstitutional Condition Doctrine**..............9

     **C.**    **Plaintiffs' Fourth Amendment Rights Protection Of The Barn**..............10

     **D.**    **Plaintiffs' Right to Exclude Precluded Inspection of the Barn**...............11

     **E.**    **Plaintiffs Were Denied Substantive Due Process** ...............................12

     **F.**    **The Hearing Violated Plaintiffs' Procedural Due Process**....................13

     **G.**    **The County's Action Was Official Policy That Inflicted Injury On Plaintiffs** ........14

     **H.**    **State Law Rights and Relief**...........................................................16

     **I.**    **California Injunctive And Declaratory Relief**....................................17

     **J.**    **California Mandamus Relief**............................................................19

     **K.**    **The BOBA Decision Was In Error As A Matter Of Law** .....................22

     **L.**    **Objections To Defendants' "Evidence"** ...........................................23

     **M.**    **The Request for Sanctions is Specious** ............................................24

*IV.*     *CONCLUSION*..................................................................................25

**TABLE OF AUTHORITIES**

**Cases**

*Action Apartment Association, Inc. v. Santa Monica Rent Control Opinion Board* (2007 9th Cir.) 509 F.3d 1020, 1026 .................................................................. 13

*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal. 4th 352 .................................................................................................................. 22

*Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 ...................... 17

*Bateson v. Geisse* (9th Cir.1988) 857 F.2d 1300, 1303 ............................................ 13

*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, 149.......................................................... 22

*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724............................ 23

*Celotex Corp. v. Catrett* (1986) 477 U.S. 317 .............................................. 10, 14, 22

*Chandler v. Miler* (1997) 520 U.S. 305 ......................................................................... 9

*City of Santa Barbara v. Adamson* (1980) 27 Cal. 3d 123 ......................................... 17

*Clark v. City of Hermosa Beach* (1996) 48 Cal. App. 4th 1152 ................................. 20

*Coffee-Rich, Inc. v. Fielder* (1975) 48 Cal.App.3d 990, 999-1000 ............................ 17

*Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1562-1563 .............................................................................................................. 17

*County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668 ....................... 22

*Crown Point v. Sun Valley* (9th Cir. 2007) 506 F.3d 851, 855-56 ............................. 13

*Currier v. City of Pasadena* (1975) 48 C. A. 3d 810, 815 ................................ 1, 10, 11

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey* (9th Cir.1990) 920 F.2d 1496, 1508.... 13

*Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34 .................... 21

*Frost v. Railroad Commission* (1925) 197 Cal. 230..................................................... 9

*G.H. Love, Inc. v. Fleming* (9th Cir. 1947) 161 F.2d 726 .......................................... 10

*Gabric v. City of Rancho Palos Verdes* (1977) 73 C.A. 3d 183, 193 ........................ 21

*Goat Hill Tavern v City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525 ................ 21

*Goldberg v. Kelley* (1970) 397 U.S. 254 ................................................................... 19

*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 96 ........ 21

*Hansen Brothers v. Board of Supervisors* (1996) 12 Cal.4th 533, 551-552............... 11

*Hendler v. United States* (Fed. Cir. 1991) 952 F.2d 1364 .......................................... 11

*Home Ins. v. Morse* (1874) 87 U.S. 455, 451 .............................................................. 9

*Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 401 ........................ 17

*In Re Berry* (1968) 38 Cal. 2d 137, 147 ..................................................................22

*Ingersoll v. Palmer* (1987) 43 C.3d 1321 .............................................................16

*Jackson v. Gates* (9th Cir. 1992) 975 F.2d 648, 653 ........................................1, 14

*Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528..............................................12

*Lynch v. Household Finance Corp. (1972),* 405 U.S. 538......................................11

*Marshall v. Barlow's Inc.* (1978) 436 U.S. 307, 312-13.........................................10

*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 ...........................................................23

*Monell v. Dept of Social Services* (1978) 436 U.S. 658 ...........................14, 15, 16

*Muchenberger v. City of Santa Monica* (1929) 206 Cal. 635, 646...........................17

*Nightlife Partners v. City of Beverly Hills* (2003) 108 Cal. App. 4th 81 ..................20

*Nollan v. Cal. Coastal Com'n* (1987) 483 U.S. 825, 838 ........................................9

*North Pacifica, LLC v. City of Pacifica* (9th Cir.2008) 526 F.3d 478, 484................13

*Pearl Meadows Mushroom Farm, Inc. v. Nelson* (N.D.Cal.1989) 723 F.Supp. 432 (Aguilar, J.) .......................................................................................................10

*Pembaur v. City of Cincinnati* (1986) 475 U.S. 469, 481 .......................................15

*People v. Belous* (1969) 71 C.2d 945, 963 ...........................................................17

*People v. Tillery* (1989) 211 Cal. App. 3d 1569 ....................................................16

*Perry v. Sindermann* (1972) 408 U.S. 593, 597-598 ...............................................9

*Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559 .......................................................17

*Saleeby v. State Bar of California* (1985) 39 Cal.3d 547, 563-64 .............................18

*Sanchez v. County of San Diego* (9th Cir.2006) 464 F.3d 916 .................................10

*Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768, 783 .......17

*Shanko v. County of Lake* (2015) 116 F.Supp.3d 1055 (N.D.Cal, Judge Tigar) ..........13, 19

*Sullivan v. Town of Salem* (2d Cir. 1986) 805 F.2d 81, 84-85..................................13

*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515.... .......................................................................................................21, 22

*U.S v. James Daniel Good Real Property* (1997) 510 U.S. 43..................................12

*United States v. Craft* (2002) 535 U.S. 274, 280, 283 ............................................11

*United States v. Page* (9th Circ 1962) 302 F. 2d 81, 82-83 .....................................9

*Vail v. Louisiana* (1970) 39 U.S. 30, 34 ...............................................................10

*Vidaurri v. Superior Court* (1970) 13 Cal.App.3d 550.................................16, 17, 23

*Villegas v. Gilroy Garlic Festival Ass'n* (9th Cir.2008) 541 F.3d 950, 964 ...............14

*Welch v. State Teachers' Retirement System* (2012) 203 Cal.App.4th 1 ...................................21

*Welshans v. City of Santa Barbara* (1962) 205 Cal.App.2d 304, 308........................................23

*Wulf v. City of Wichita* (10th Cir.1989) 883 F.2d 842, 868........................................15

**Statutes**

California Code of Civil Procedure § 1060 ........................................17

California Code of Civil Procedure § 1094.5 ........................................19, 20, 21

California Code of Civil Procedure § 1094.5(b)-(c)........................................21

California Code of Civil Procedure § 1822.50 ........................................7, 8, 16, 17

**Regulations**

Sonoma Building Code........................................15

Sonoma County Building Code Section 7-7 ........................................passim

Sonoma County Code Article II Section 7-13(B)(1) ........................................16, 21

**Constitutional Provisions**

California Constitution Article I § 1 ........................................16, 17

California Constitution Article I § 13 ........................................16

California Constitution Article I § 7 ........................................18

1  The motion must be denied because it presents no evidence to shift the burden to plaintiffs

2  to respond, and even if it does, as set forth below, there are triable issues as to all claims.

3  This case is very simple: defendant violated the unconstitutional condition doctrine by

4  demanding plaintiffs surrender their Fourth Amendment and due process rights as a condition

5  precedent to issuance of a nondiscretionary building permit to which they were entitled as a matter

6  of law. As succinctly stated in *Currier v. City of Pasadena* (1975) 48 C. A. 3d 810, 815:

> The city contends, at length, that the ordinance involves only consensual entries.
> The argument is specious. To compel a property owner to let his property lie vacant
> and to prohibit him from selling it, unless he "consents" to a warrantless search is
> to require an involuntary consent. The owner's basic right to use and enjoy the fruits
> of his property cannot be conditioned on his waiving his constitutional rights under
> the Fourth Amendment and under article I, section 13, of the California
> Constitution.

As stated in *Jackson v. Gates* (9th Cir. 1992) 975 F.2d 648, 653:

> The issue was raised whether Jackson's Fourth Amendment rights were actually
> violated since he did not comply with the urinalysis order. . . Thus, it is established
> law that no one should suffer harm by state action for asserting a constitutionally
> protected right.
>
> ***
>
> Because the right to be free from unreasonable searches is contained explicitly in
> the Fourth Amendment, it follows that the right to be free from adverse
> consequences for refusing to submit to an unreasonable search must also be found
> there.

Defendant likewise here made a demand for a warrantless search of plaintiffs' barn as a condition to for the permit. The demand violates the unconstitutional condition doctrine that government cannot require surrender of constitutional rights as a condition precedent to a government benefit or exercise of a right. The issue is **not** as wrongly tendered by the motion whether the defendant has a right to inspect the building. At issue is the **timing** of the right to inspect. Plaintiffs have not challenged, nor have they ever challenged such an **ultimate** right. Thus, they have so pled in the verified complaint, Doc. 1 p. 8:22-27: "Plaintiffs conceded and did not dispute that, after the issuance of the ag exempt permit, the County would be entitled…to perform an interior inspection for the purpose of conforming agriculture use of the barn as set

forth in the Sonoma Code, section 7-7(d)." Despite these unequivocal verified facts, the County baselessly and falsely asserts plaintiffs want the County to "take our word for it." Doc. 27, p. 4:6.

Per the Sonoma County Building Code Section 7-7 (hereinafter Section 7-7), the right to inspect a building arises **only after** the issuance and recordation of the exemption and completion of building for its proposed use. Section 7-7 is attached to the defendant request for judicial notice, Exhibit A at Doc. 29, p. 3-4 (RJN A).

Section 7-7(d) provides:

> Unless otherwise authorized, the structure or repairs, alterations, additions, or remodels for which the exemption is approved must be completed within three (3) years of the date of the authorization for exemption.
> When the structure or repairs, alterations, additions, or remodels is completed, an inspection must be performed by permit resource management division staff. The sole purpose of this inspection shall be to insure that the structure is complete and is being used for the use stated on the application for exemption.

In clear violation of  the above, the County demanded an inspection of the building as a condition precedent to the issuance of the exemption. The County was putting the proverbial cart before the horse. Defendant's demand for an inspection was pointless and irrational, like a teacher grading a student's test before the student takes the test. Even if the barn had no agriculture use prior to or at the time of at the time of the exemption issuance, that use is completely irrelevant. Section 7-7 is expressly concerned with the future use of the building, not its present use. The ordinance is geared to the future, after the issuance of the exemption. Section 7-7 addresses a building "to be exempted" and its a "proposed use" after issuance of the exemption, not the building's pre-issuance use. The building's conformance to the agricultural "proposed use" is to be completed within three years after the issuance. Only after the completion is when the inspection of the building is permitted to occur to assure it meets the exemption requirements. Section 7-7 does not allow, nor did plaintiffs ever agree to, a pre-issuance inspection of the barn. They did agree to and do agree to a post-issuance inspection of the barn conforming to Section 7-7(d) upon completion of the proposed agricultural building and use within 3 years of the exemption issuance.

I.      __FACTS (The F. S. Schmid Declaration filed herewith verifies these facts)__

In June 2018, defendant's Permits and Resource Management Department (PRMD) posted plaintiffs' property regarding an "AG Barn", alleging unpermitted work in 2000 on an agricultural barn on their 61 plus acre property. The barn was built in the late 1940's and shown on the tax assessor's rolls as a "hay barn" starting in the 1950's. Plaintiffs have at all times used the barn for agricultural purposes in connection with and in support of the commercial ranching/farming enterprises on their property. The barn was and is not open or accessible to the public. In response to the notice, plaintiffs promptly met with PRMD personnel and were advised they could seek an "agricultural building exemption permit" for the barn under Section 7-7. Such exemption is not a variance, it is an alternative to a regular building permit.

Because plaintiffs' land unquestionably qualified for the exemption, plaintiffs submitted an exemption application on the County's form, a true copy of which is attached to the defendant's declaration (Doc 28, p. 9) and to the accompanying declaration of plaintiff Frear Stephen Schmid (FSS Dec.) as Ex 1 (all numerical Exhibits referenced herein are attached to the FSS Dec.). The application requests "Present Use of Land." This request corresponds to Section 7-7: "Description of the present use of the land." RJN A. Plaintiffs provided the actual active agricultural uses of the land, including cattle, etc. The application form also requests "Use of Proposed Building." Ex. 1. The application, in contrast to the question about the land, does not request the **present** use of the building, but rather the future use. Thus, the application form specifies: "This application is **for a building to be used** for housing farm machinery, animals, supplies…" (emphasis added). Ex.1. The application's request for **future** proposed use, not a present use, corresponds to the language of Section 7-7: "Description of the building or structure **to be** exempted and its **proposed** use." (emphasis added). RJN A. Plaintiffs set forth the numerous proposed agricultural uses for which the building would be used. Ex.1. Plaintiffs completed the exemption application process, received the necessary sign offs by all required PRMD divisions (Ex.1.) and paid the required fees to the cashier on July 16, 2018. Doc. 28, p. 10.

Although not required by Section 7-7 (it envisions an over the counter issuance based merely on submission of the verified application), plaintiffs were advised and understood all that remained for the approval of the exemption was a "site evaluation" to confirm the prerequisite

1   "present" agricultural "use of the land" and the setback requirements. The defendant confirms

2   this definition. Doc. 27, p. 3:21-28. Plaintiffs were never informed of any need or right by the

3   County to inspect the building prior to the issuance of the exemption, and plaintiffs never agreed

4   or consented to any inspection of the building prior to the issuance of the exemption. PRMD

5   personnel confirmed to them that the site evaluation did not involve an inspection of the barn.

6         The PRMD's Policy and Procedure Number 4-0-5 (Ex 2) provides:

7   
8       Site evaluation: staff conducts a **review in the field** to determine the following:1.
   *Flood hazard zone.* Agricultural exempt buildings are not allowed in a flood hazard
9       zone.2. *Soil stability.* If a geotechnical report is required, an agricultural exemption
   cannot be approved until the report is submitted and approved. 3. *Setback*
10      *requirements.* Verify that the proposed building conforms to setback requirements.
   4. *Agricultural use.* Verify that **an** agricultural use exists on the property. If the
11      agricultural use cannot be established on the property until after the agricultural
   building is constructed (i.e., can't place the horses on the property without a
12      building to house the feed, etc.), the Department will accept evidence of the
   agricultural use. A letter from the property owner is acceptable. (emphasis added)
13  

14  Consistent with the foregoing, during the application process, plaintiffs were advised by the

15  cashier that the plaintiffs would be telephonically contacted to advise of the site evaluation date.

16        Per voice mail from Mr. Marquez of PRMD on August 2, 2018, he advised plaintiffs he

17  would be coming by later that morning to conduct the site evaluation. Plaintiff Frear Stephen

18  Schmid unlocked the gate at the end of their driveway to allow access when Mr. Marquez showed

19  up. Later in the morning, after a brief exchange with Schmid about his dogs, Mr. Marquez opened

20  the gate and drove to the barn. A few minutes later, plaintiff Frear Stephen Schmid saw the County

21  car driving off down the driveway without any attempt by Mr. Marquez to make any contact with

22  plaintiffs. He never asked to access the interior of the barn, nor could he have seen into or accessed

23  the barn himself without plaintiffs' aid, as the barn was secured, locked shut and has no windows

24  for him to view through. The barn has battens, so there are no "slats" to peer through.

25        On August 6th, 2018, plaintiffs received a letter from Senior Plans Examiner (not an

26  inspector as wrongly asserted in the motion) Paul Marquez advising that "Re **Site**

27  **Evaluation**...After **visiting the site**, I have determined that the proposal does not meet the

28  ordinance requirement due to vehicle storage other than farm, agricultural, and feed." (emphasis

**4**

added). Doc. 28, p. 27. Plaintiffs understood that he was referring to "vehicles" outside the barn but in its vicinity. Accordingly, the next day, plaintiffs emailed Mr. Marquez and advised that all the "vehicles" were for agriculture purposes related to the agriculture use of the property, explaining in detail the agriculture use of each. Ex 3. Senior Plans Examiner Marquez never advised plaintiffs he allegedly saw "a vehicle" through a crack in the barn. Plaintiffs first learned of this by a hearsay assertion in the County's "staff report" at the appeal hearing months later. But it is and was wholly irrelevant what he allegedly saw in the barn since the compliance status is determined only after the issuance of the exemption and completion for the proposed use as set forth on the application. Section 7-7(d). Thus, even if the alleged vehicle were ultimately prohibited, the issue on the day of Mr. Marquez' visit, was not the agricultural use of the building (or lack thereof) but was strictly to perform  the site evaluation, which as set forth above is to confirm "set back " requirements and "agricultural use of the land  exists". The building's use was absolutely irrelevant since the exemption does not apply to current usage, but rather applies the future "proposed use." Because inspection of the building comes after the issuance of the exemption (Section 7-7(d), Mr. Marquez absolutely had no right or cause to look into or inspect the building. And if he did so, he exceeded the license of his visit.

In a further email August 14, 2018, plaintiffs advised Mr. Marquez that the barn had existed since the 1940's and was on the tax rolls as an agricultural barn, and further advised that an inspection of it was not necessary nor appropriate under the ordinance/law, as had been confirmed to plaintiff Frear Stephen Schmid during the PRMD application process, and that plaintiffs would address the issue of an inspection with higher ups and did so by cc:ing the email to PRMD Director Wick. Ex 4. Director Wick responded, "Let us in to inspect." Ex 5.

Thereafter, in a telephone conversation with Mr. Spaulding at PRMD, Frear Stephen Schmid informed Mr. Spaulding (in response to his demand for an interior inspection) that he would open the barn doors, but "all he will see is hay". Schmid never told or suggested to Spaulding, Director Wick or anyone at PRMD that he would allow an interior inspection of the barn prior to the issuance of the exemption. Mr. Marquez made a second site visit, during which Frear Stephen Schmid opened the shut barn doors showing the barn stacked with hay stored in

there to feed the beef cattle on the property. Doc. 28, p. 31. Schmid did so in a "get-along" hope that this cooperative gesture would demonstrate the agricultural use of the building.

Mr. Quarles of PRMD emailed plaintiffs on September 6, 2018 demanding an interior inspection to which Schmid replied on September 10, 2018 by pointing out that Mr. Quarles had failed to address "the elephant in the room" – nothing allowed or required an interior inspection of the barn for issuance of the exempt permit and the demand was an invalid attempt to force plaintiffs to surrender their Fourth Amendment rights and associated rights under California law. Ex 6. Director Wick gave a final denial of the application. Ex 7. Plaintiffs appealed his final denial to the County's Board of Building Appeals (BOBA).

At the hearing before the BOBA, plaintiffs submitted a statement with attachments arguing that the plaintiffs were factually and legally entitled to the exemption, and that the County's conditioning the permit on the surrender of their Fourth Amendment Rights, and their associated rights under California law was legally incorrect and improper. Plaintiffs contended that the site evaluation conducted established the agricultural use of the property and the setbacks. Plaintiffs conceded that after the issuance of the exemption, the County would be entitled to perform an interior inspection to confirm the structure and agriculture use of the barn as set forth in Section 7-7(d). Although plaintiff sought to question/cross examine Mr. Marquez and PRMD staff re: its staff report and the basis for the inspection, plaintiffs' requests were denied. The hearing was also unfair, inter alia, due to its ad hoc rule-less procedure.

At the conclusion of the hearing, the BOBA voted to deny plaintiffs' appeal, i.e. upholding the denial of the exemption. The County gave written notice of the denial, which had no required findings. Doc. 28, pp. 33-37. A subsequent proposal by plaintiffs to Director Wick to resolve the issue was rejected by Director Wick, whereby he confirmed his adherence that issuance of the exemption be conditioned on an internal inspection of the barn. Ex 8.

## II.     SUMMARY OF ARGUMENTS

A.  Plaintiffs' Fourth Amendment rights, right to exclude, and substantive due process rights were unconstitutional used as a pre-condition to receive a legal right (the exemption);

B. Their Fourteenth Amendment rights to not be denied liberty (right against unreasonable searches and right to exclude) and property (including the entitlement to the exemption and right to exclude) without due process of the law were violated;

C. Their right of a meaningful opportunity to a fair hearing before an impartial decision maker was violated, including the right to present evidence and cross-examine.

D. Plaintiffs were deprived by the County of their corresponding rights afforded them under the California Constitution and civil law including their right to own, enjoy and use property, to be free of unreasonable searches, the right to privacy; and freedom from searches in violation of California Code of Civil Procedure (C.C.P.) § 1822.50;

E. The County's policy maker, Director of the PRMD, Tennis Wick, implemented the policy of denying the exemption. The BOBA ratified and implemented the policy.

### III.   **ARGUMENT**

### A. **The County Arbitrarily Violated And Flouted Its Ordinance**

In relevant part, Section 7-7 regarding agricultural exempt buildings, provides:

(b) Prior to the erection, construction, conversion, enlargement or major alteration of any building or structure situated on agricultural land, or prior to the moving of any building or structure onto said land subject to exemption, a written application for the exemption shall be filed with the chief building official and shall contain:

(1) A verified statement in writing signed by the owner of the agricultural land regarding each of the requirements contained in this section;

(2) **Description of the present use of the land**;

(3) **Description of the building or structure to be exempted and its proposed use;**

(4) Name and address of the owner of the land and the assessor's parcel number. The applicant must be the owner;

(5) An accurate dimensioned plot plan showing all buildings, structures, property lines, streets and roads and the means of access thereto;

(6) Such further information as the chief building official may require;

(7) Payment of the exemption fee.

(c) The chief building official shall record a notice of agricultural exemption with the county recorder following issuance of an agricultural exemption. …

(d) Unless otherwise authorized, the structure or repairs, alterations, additions, or remodels for which the exemption is approved must be completed within three (3) years of the date of the authorization for exemption. If the structure or repair, alteration, addition, or remodel is not completed within this time period, a new

**PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT/SUMMARY ADJUDICATION (ECF 27)**

exemption must be applied for. **When the structure or repairs, alterations, additions, or remodels is completed, an inspection must be performed by permit resource management division staff. The sole purpose of this inspection shall be to insure that the structure is complete and is being used for the use stated on the application for exemption.** (emphasis added)

Here, although the County processed, approved and accepted plaintiffs' application and payment, it refused to issue the exemption permit unconstitutionally conditioning it on an interior inspection of the barn. This is in contradiction to Section7-7(d) that expressly states an inspection shall be after the issuance of the exemption permit, and the permit allows three years to complete the proposed use and work. There was no valid or legitimate factual or legal reason to inspect the building, but defendant capriciously demanded an inspection contrary to the express language of Section 7-7. Defendant has never offered a legitimate governmental reason why it had to inspect the building, much less reasons that comport to constitutional warrant requirements or C.C.P. § 1822.50, which requires a court ordered inspection warrant. No rational purpose is served by inspecting the barn before its proposed use and structure is complete.

The County fails to point to any law, ordinance or code that makes demand for the interior inspection of the barn a predicate, much less a constitutionally compliant predicate, to the issuance of the exemption. The motion's sleight of hand to substitute the words "site inspection" for "site evaluation" still does not permit a search of the barn. First, the contrary to the moving papers statement, the County's ordinance says nothing about either a site evaluation or a site inspection. The "site evaluation" appears in the County's Policy 4-0-5 (Ex 2), which defines it as where "staff conducts a **review** in the **field**" (emphasis added ) for the very limited purposes of determining no flood zone (inapplicable here, but nonetheless met), soil stability (inapplicable here, but nonetheless met), setback requirements (met here) and "an agricultural use exists on the property" (which is met,there were/are multi, not just "an", agricultural uses). Thus, whether called site evaluation or site inspection, it is clearly a review conducted in an open field and manifestly does not allow for or require an interior inspection of the proposed building. Moreover, the County's perverted definition of site evaluation is at odds with the clear language of Section7-7 which expressly prescribes when the interior search and the scope thereof are to occur, i.e. **after** issuance of the exemption and completing of the proposed building.

**B. The County Violated The Unconstitutional Condition Doctrine**

The County's demand for an interior inspection violates the long recognized unconstitutional condition doctrine that government cannot require surrender of rights as a condition precedent to receipt of a government benefit or exercise of one's rights. *Home Ins. v. Morse* (1874) 87 U.S. 455, 451; *Frost v. Railroad Commission* (1925) 197 Cal. 230. As summarized in *Perry v. Sindermann* (1972) 408 U.S. 593, 597-598:

> For at least a quarter-century, this Court has made clear that, even though a person has no "right" to a valuable governmental benefit, and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interest,… This would allow the government to "produce a result which [it] could not command directly.

Here, under the ordinance, clearly plaintiffs were entitled as a matter of law to the exemption, but the County unconstitutionally attempted to condition this entitlement, on plaintiffs' waiver 1) of their fundamental Fourth Amendment Rights against warrantless/unreasonable searches, 2) of their fundamental "right to exclude" property right under the Fourteenth Amendment liberty and property clauses, and 3) their fundamental substantive due process right to the issuance of the exemption. Such unconstitutional conditions cloaked within the permit process has been compared to an "out-and-out plan of extortion." *Nollan v. Cal. Coastal Com'n* (1987) 483 U.S. 825, 838 (holding that a permit condition is unconstitutional if it lacks an "essential nexus" to the justification for the permitting system). *Chandler v. Miler* (1997) 520 U.S. 305 ( striking down as unconstitutional a Georgia statute that to qualify for a place on the ballot, a candidate must present a certificate from a state approved laboratory, reporting that the candidate submitted to a urinalysis drug test within 30 days prior to qualifying for nomination or election and that the results were negative).

This logic is in line with recognition that waiver of the 4th Amendment cannot be obtained by coercion. As stated in *United States v. Page* (9th Circ 1962) 302 F. 2d 81, 82-83:

> Because of the importance of preserving constitutional rights, various rules have been stated for the guidance of the trial judge in determining whether consent to the search was in fact given. The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent

must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. "Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights'.

## C. Plaintiffs' Fourth Amendment Rights To Protection Of The Barn

The Fourth Amendment prohibits warrantless intrusions into non-public areas commercial premises. *Marshall v. Barlow's Inc.* (1978) 436 U.S. 307, 312-13. Commercial premises include buildings which serve as warehouses, greenhouses, workshops, mushroom growing barns, factories, etc. *Pearl Meadows Mushroom Farm, Inc. v. Nelson* (N.D.Cal.1989) 723 F.Supp. 432 (Aguilar, J.). The motion cites to no law or facts that would permit a warrantless search of the subject locked barn, which was being used for commercial purposes related to and in support of the agricultural enterprises on the property and not open or accessible to the public. As such, the motion does not shift the burden on plaintiffs under *Celotex Corp. v. Catrett* (1986) 477 U.S. 317. In addition, defendant does not meet its constitutional burden: the burden rest on the government to justify a warrantless search. *Vail v. Louisiana* (1970) 39 U.S. 30, 34. It has failed to do so.

The defendant's cited case *G.H. Love, Inc. v. Fleming* (9th Cir. 1947) 161 F.2d 726 actually supports plaintiffs' contention: first there must be a law authorizing the inspection, and second, absent consent, it must be done pursuant to court order. Here, there is no authorizing law. To the contrary, the Section7-7does not precondition the exemption upon a pre-issuance inspection, but requires the inspection occurs after the issuance. Second, no court order allowed such an inspection. Thus, there was no implied or actual consent to waiver of plaintiffs' constitutional right. *Currier v. City of Pasadena, supra.*

Defendant in passing cites to *Sanchez v. County of San Diego* (9th Cir.2006) 464 F.3d 916 only for the proposition that Country may conduct "a site review in the field to determine or verify that an agriculture use of the exists." The site review is and has not been contested in this matter. But *Sanchez* (which has very dubious constitutional vitality, see fn 8 and dissent therein) is inapposite as to an inspection of the barn. *Sanchez* involved a permission to do a limited walk though, which was a statutory precondition for receipt of governmental money which pre-condition was authorized, defined and prescribed by an Act of Congress (thus limiting its

invasiveness). Here, conversely, again nothing in the Sonoma Code permits the demanded pre-issuance inspection of the barn, and much less limits the parameters of the inspection. Further, plaintiffs were not seeking a government discretionary largesse, but exercising their constitutionally guaranteed vested right to use of their property and barn subject to reasonable regulation, which Section 7-7 serves to effectuate. Reasonable regulation is a constitutional right, not charity. *Hansen Bros v. Board of Supervisors* (1996) 12 Cal.4th 533, 551-552. And importantly, Section 7-7 does not authorize the pre-issuance inspection, and California law expressly forbids it without an inspection warrant. Also, PRMD personnel confirmed to plaintiffs there would be no search of the barn as part of the site evaluation. Thus, there was no consent or agreement to waiver of plaintiffs' constitutional rights. *Currier v. City of Pasadena, supra.*

**D. Plaintiffs' Right to Exclude Precluded Inspection of the Barn**

The demand for an inspection is also an unconstitutional attempt to force plaintiffs to forfeit their fundamental and long recognized constitutional "right to exclude," a core right in the bundle of rights inherent in owning property. The right to exclude has always been fundamental to and part of the preservation of liberty and personal freedom in the United States. The Federal Circuit recognized the fundamental nature of the right to exclude in *Hendler v. United States* (Fed. Cir. 1991) 952 F.2d 1364,stating:"Among a citizen's--including a property owner's--most cherished rights is the right to be let alone." The court continued: "In the bundle of rights we call property, one of the most valued is the right to sole and exclusive possession--the right to exclude strangers, or for that matter friends, **but especially the government**." (emphasis added) Continuing, the court added: "The intruder who enters clothed in the robes of authority in broad daylight commits no less an invasion of these rights than if he sneaks in in the night wearing a burglar's mask. In some ways, entry by the authorities is more to be feared, since the citizen's right to defend against the intrusion may seem less clear. Courts should leave no doubt as to whose side the law stands upon." The Court noted: "The essence of all property is the right to exclude…" See also *United States v. Craft* (2002) 535 U.S. 274, 280, 283 (right to exclude most important stick). In sum, the right to exclude is a fundamental constitutional right.

As stated in *Lynch v. Household Finance Corp. (1972),* 405 U.S. 538:

**PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT/SUMMARY ADJUDICATION (ECF 27)**

The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a personal right, whether the property in question be a welfare check, a home, or a savings account. In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other.

The right to exclude is not merely duplicative or subordinate to the plaintiffs' Fourth Amendment right set forth above. In *U.S v. James Daniel Good Real Property* (1997) 510 U.S. 43, the Supreme Court held at pages 49-50:

We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another. As explained in *Soldal* v. *Cook County (1992)* 506 U. S. 56, 70: "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Here, as in *Soldal,* the seizure of property implicates two " 'explicit textual source[s] of constitutional protection,' " the Fourth Amendment and the Fifth. *Ibid.* The proper question is not which Amendment controls but whether either Amendment is violated.

Also, in *Good Real Property*, the Supreme Court ruled at 53-54: "Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." And the Court further state at page 61, "the constitutional limitations we enforce in this case apply **to real property in general**, not simply to residences. That said, the case before us well illustrates an essential principle: Individual freedom finds tangible expression in property rights." (emphasis added)

### E.  Plaintiffs Were Denied Substantive Due Process

Plaintiffs obtained an absolute right to the exemption when they fulfilled all the conditions for its issuance and paid for its issuance. Defendant had a mandatory duty to issue the permit since plaintiffs fulfilled all requirements therefor. The denial to grant it due to plaintiffs' refusal to consent to an unconstitutional search constitutes a denial of substantive due process under the 14th Amendment. The unconstitutional demand resulting in the denial to issue the exemption was arbitrary and capricious and bore no rational relationship to any legitimate governmental purpose, in fact it was an illegitimate purpose, denial of plaintiffs' constitutional rights. *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528. *Lingle* made clear "that a challenge to land use regulation may state a substantive due process claim, so long as the regulation serves no legitimate governmental

purpose." *North Pacifica, LLC v. City of Pacifica* (9th Cir.2008) 526 F.3d 478, 484. Due process violations cannot be remedied under the Takings Clause, because "if a government action . . . is so arbitrary as to violate due process – that is the end of the inquiry. No amount of compensation can authorize such action." *Action Apartment Association, Inc. v. Santa Monica Rent Control Opinion Board* (2007 9th Cir.) 509 F.3d 1020, 1026, fn. 1.

The Ninth Circuit has held that the refusal to issue a building permit after an individual has satisfied all the requirements for the permit, as plaintiffs did here, is arbitrary and capricious government action which deprives a plaintiff of substantive due process. *Crown Point v. Sun Valley* (9th Cir. 2007) 506 F.3d 851, 855-56 (failure to issue a permit violated substantive due process); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey* (9th Cir.1990) 920 F.2d 1496, 1508. As stated in *Bateson v. Geisse* (9th Cir.1988) 857 F.2d 1300, 1303:

> A substantive due process claim does not require proof that all use of the property has been denied, but rather that the interference with property rights was irrational or arbitrary… Bateson was not required to seek just compensation from state entities … because substantive due process is violated at the moment the harm occurs, the existence of post deprivation state remedies does not bar a § 1983 action.

In *Shanko v. County of Lake* (2015) 116 F.Supp.3d 1055 (N.D.Cal, Judge Tigar), Judge Tigar noted a property interest subject to protection by the due process clause results from a "legitimate claim of entitlement" created by an independent source such as state law. Here, plaintiffs had a legitimate claim to the exemption by meeting  all conditions for its issuance per Section 7-7. As noted in *Sullivan v. Town of Salem* (2d Cir. 1986) 805 F.2d 81, 84-85:

> By that standard we did not intend to remove from constitutional protection every application for a license or certificate that could, under any conceivable version of facts, be the subject of discretionary action; a theoretical possibility of discretionary action does not automatically classify an application for a license or certificate as a mere "unilateral hope or expectation". On the contrary, our standard was intended to be a tool capable of measuring particular applications to determine if the applicant had a legitimate claim of entitlement based on the likelihood that without the due process violation that application would have been granted.

**F. The Hearing Violated Plaintiffs' Procedural Due Process**

Defendant presents no evidence addressing the verified facts in the complaint that plaintiffs were denied, inter alia, their right to cross-examine (Doc. 1, paragraph 21) and their

right to an impartial tribunal (Doc. 1, paragraphs 20 and 22). See also FSS Dec 8:27-9:26. Thus, it has not shifted any burden on plaintiffs to reply under *Celotex*. Notwithstanding, plaintiffs to avoid redundancy incorporates here its argument below at pages 18:16-19:18

### G. The County's Action Was Official Policy That Inflicted Injury On Plaintiffs

Defendant asserts, contrary to the clearly asserted facts establishing such policy in the verified complaint (see complaint paragraphs 12, 13, 16, 23, and 29). that there is no "evidence" to establish policy under *Monell v. Dept of Social Services* (1978) 436 U.S. 658. This contention is frivolous and belied by the admissible parts of  Quarles' declaration and its exhibits. Indeed, the motion concedes that  it is the County's policy and maintains it had the right to demand the search, and refusal to consent thereto justifies the denial of the exemption. Doc. 27, p. 7:23-24.

The policy of conditioning the issuance of the exemption on penalty of plaintiffs forfeiting their constitutional rights was condoned, implemented and furthered with the full knowledge of and approval of the County's applicable policy maker, PRMD Director Wick. In addition, the County's BOBA ratified and approved the policy and acts, thereby making the acts the official policy. County's action directly inflicted injury on to plaintiffs (deprivation of the exemption to which they were entitled)), which injuries flowed from the policy, that is "pursuant to official municipal policy of some nature ." *Monell*, *supra* at p. 691. *Monell* states at 694: "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." The policy need not be unconstitutional per se; it need only cause the constitutional violation. *Jackson v. Gates,* supra at 654).

 A municipality policy or custom is shown : (1) by a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Villegas v. Gilroy Garlic Festival Ass'n* (9th Cir.2008) 541 F.3d 950, 964.

1    These principles were summarized in *Pembaur v. City of Cincinnati* (1986) 475 U.S. 469,

2    481: "If the decision to adopt that particular course of action is properly made by that

3    government's authorized decisionmakers, it surely represents an act of official government

4    "policy" as that term is commonly understood." In other words, a single act or decision constitutes

5    a "official policy" for *Monell* liability.

6    Statutes, ordinances, regulations, municipal charters, and other similar enactments inform

7    whether an official has final policymaking authority under state law. *Wulf v. City of Wichita* (10th

8    Cir.1989) 883 F.2d 842, 868. The Sonoma Building Code sections below (see Plaintiffs' Request

9    for Judicial Notice (PRJN) filed herewith) provide and establish such final policy making power

10   and authority of Director Wick and the BOBA:

11

12   **Sec. 7-2. - Chief building official and duties.**

13          There is Established the Office of Chief Building Official. The chief building
     official shall be the **director of the permit and resource management**
     **department** or his or her designee. The chief building official shall supervise and
14   be responsible for all inspection work required for the proper enforcement of
     regulations imposed by this chapter except those duties specifically delegated
15   herein to the county public health officer. The chief building official shall perform
     related duties as directed by the board of supervisors. The chief building official
16   shall appoint such deputies and assistants as may be authorized by the board of
     supervisors.
17          . . .Upon presentation of proper credentials and pursuant to the law, the chief
     building official or his or her duly authorized representative may enter buildings,
18   structures, or premises in the unincorporated area of the county to perform any
     duty imposed upon him or her by this chapter.
19   **Sec. 7-3. - Local appeals board and housing appeals board.**
            There is created the local appeals board and housing appeals board as
20   provided in section 1.8.8.3 of the California Building Code, consisting of seven
     (7) members appointed by the board of supervisors. . . .Except where inconsistent
21   with the provisions of this section, <u>Section 7-4, Section 13-11</u> or <u>Section 13-12</u> of
     this code, the duties of the local appeals board and housing appeals board shall be
22   as prescribed in Section 108.8.3 of the California Building Code.

23   Director Wick is unquestionably the head of PRMD. Ex 9 (Organizational Chart). That

24   Mr. Wick is a policy maker is proven by the "Policy and Procedure 4-0-5 referenced in the

25   complaint, paragraphs 16 and 17, on which policy Mr. Wick signed off. Ex 2 . In his Oct 2, 2018

26

27   email, Wick confirmed his adoption of and implementation of a policy to force plaintiffs to allow

28

an inspection. Ex 7. Also as set forth in the FSS Dec 10:25-11:5, Schmid knows of his own personal knowledge that Director Wick is an authorized policy maker for the County.

In addition, the County's BOBA ratified the policy. Plaintiff's verified complaint provides ample evidence of ratification of the policy. Complaint, Doc. 1, pp. 18, 20, and 23. The County submits no argument or evidence to contradict these facts. Indeed, its own motion confirms the BOBA ratification. See Doc. 27, p. 4, fn 1. That the County unquestionably ratified the policy and the wrongful conduct is also proven by defendant's own declaration. See Quarles Dec. (Doc. 28, pp. 33-34), in which the BOBA upheld the policy of refusing to issue plaintiffs the exemption due to their refusing to allow an interior inspection of the barn. The BOBA had the last say for the County. Sonoma County Code Article II Section 7-13(B)(1) which provides: "Decisions of the local appeals board and housing appeals board are final." Wick's November 19th email confirms the Board's decision is final and ratifies his acceptance thereof. Ex 8. Thus, as a matter of law, plaintiff has established a policy by the County under *Monell*.

## H. State Law Rights and Relief

The County also has violated plaintiffs' rights to privacy and against unreasonable searches under Article I §§ 1 and 13 of the California Constitution, and their right under C.C.P. § 1822.50, which requires a court ordered inspection warrant for inspections of any and all alleged zoning and building violations. *People v. Tillery* (1989) 211 Cal. App. 3d 1569. Although, California's right against unreasonable searches generally parallels federal law, this is clearly not true when it comes to administrative searches, where California charts its own course and affords greater protection. *Ingersoll v. Palmer* (1987) 43 C.3d 1321. See also *Vidaurri v. Superior Court* (1970) 13 Cal.App.3d 550, at 553:

> For authority to go upon the Vidaurris' premises, Inspector Baker relied upon Agricultural Code, section 5023, which provides 'the commissioner, whenever necessary, may enter and make an inspection of any premises, plant… or thing in his jurisdiction.' This statute, however, is 'subject to the overriding mandate of 1968 amendments to state law (Code Civ. Proc., §§ 1822.50-1822.56) which permit inspection by a health [or building, fire, safety, etc.] officer, only upon issuance of a warrant. ...' [Italics added.] (Tellis v. Municipal Court, 5 Cal. App. 3d 455, 458 [85 Cal.Rptr. 459].) Without a warrant requirement, the statute authorizing inspection would be unconstitutional (Camara v. Municipal Court, 387 U.S. 523

[18 L.Ed.2d 930, 87 S.Ct. 1727]; Tellis v. Municipal Court, *supra*, 5 Cal. App. 3d 455, 458.)

Article I § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." The right to privacy is greater than the federal guarantee. *People v. Belous* (1969) 71 C.2d 945, 963 (right to abortion), *City of Santa Barbara v. Adamson* (1980) 27 Cal. 3d 123.

Plaintiffs have identified property interests and/or statutorily conferred benefits (i.e. the right to the exemption permit with which the defendant has interfered and the right to an inspection warrants under C.C.P. § 1822.50) which the state courts will enforce and protect. *Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1562-1563.

## I.   California Injunctive And Declaratory Relief

California courts enjoin illegal and unconstitutional municipal activities and ordinances. *Coffee-Rich, Inc. v. Fielder* (1975) 48 Cal.App.3d 990, 999-1000 (enjoining Department of Agriculture from enforcing unconstitutional statute). If local government enforces its regulations in a manner prohibited by law, the court may "interfere and enjoin" the enforcement. *Muchenberger v. City of Santa Monica* (1929) 206 Cal. 635, 646. The interpretation of ordinances and statutes are proper matters for declaratory relief. *Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 401; C.C.P. § 1060.

Here, because California law at a bare minimum afford plaintiffs constitutional rights as great as federal (if not greater than), the violation of federal constitutional provisions likewise infringes upon the corresponding state constitutional provisions. In addition, plaintiffs have a state statute that protects them, C.C.P § 1822.50 (inspection warrant required) that prohibits search of any property including open fields without an inspection warrant. *Vidaurri,* supra.

In *Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 and *Rosenfield* v. *Malcolm* (1967) 65 Cal.2d 559, the California Supreme Court applied the doctrine of unconstitutional conditions, concluding that the power of government to decline to extend to its citizens the enjoyment of a particular set of benefits does not embrace the supposedly "lesser" power to condition the receipt of those benefits upon any and all terms.

The right to due process under the California Constitution is greater than the due process requirement of the Fourteenth Amendment. The California Supreme Court has held that under the California Constitution there is a liberty interest in freedom from arbitrary adjudicative procedures in all adjudicatory hearings, even those that do not involve deprivation of property rights or liberty interests as required under § 1983 law. Under the California Constitution, "due process safeguards required for protection of an individual's statutory interest must be analyzed applying the principle that freedom from arbitrary adjudicative procedures is a substantive element of one's liberty." *People v. Ramirez* (1979) 25 Cal.3d 260, 268.

Due process guaranteed under Article I § 7 of the California Constitution thus "presumes that when an individual is subject to deprivatory governmental action, the person always has a due process liberty interest both in fair and unprejudiced decision-making and in being treated with respect and dignity.". *People v. Ramirez supra* This due process protection is applicable to all adjudicatory actions. *Saleeby v. State Bar of California* (1985) 39 Cal.3d 547, 563-64.

But even under federal due process standards, plaintiffs' due process rights and a fair hearing before an impartial tribunal were violated.

As set forth in paragraphs 21 and 22 of the complaint, the BOBA hearing was conducted in an impromptu, ad hoc manner, with plaintiffs being denied the right to cross examine or present evidence and their case in a meaningful fashion. As a matter of law, the hearing was unfair as plaintiff were denied their constitutional right to cross examine of defendants' witnesses. Thus, plaintiffs were prevented from eliciting testimony evidence that would demonstrate the inspection was not required or permitted by code and that such inspection was neither necessary nor for any legitimate purpose, that the PRMD knew an inspection required an inspection warrant, that site evaluation had defined meaning an purpose, that plaintiffs had complied with all the prerequisites for the exemption,  that the proposed search had no limitation as to scope, that search may have be converted into an instrument to serve the very different needs of law enforcement. Also, plaintiffs was disallowed to examine Mr. Marquez about his reasons for his denial letter and to ask Mr. Marquez the how, why and where he alleged looked into the barn, and what he saw or did not see, and to establish his alleged observation is meaningless since there is no prohibition

of vehicles being garaged in an agricultural exempt barn, including e.g. pickups for hauling hay and animals, all wheel utility vehicles for tending to the livestock, etc. See *Goldberg v. Kelley* (1970) 397 U.S. 254, at 269: "In almost every setting where important decisions turn on question of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." See FSS Dec.8:27-9:26 as how no cross examination prejudiced plaintiffs' ability to ferret out the relationship between the County's grudge against Schmid based upon his representing clients in actions with the County.

> In Greene v. McElroy (1959) 360 U.S. 474, 496-497, 3 L.Ed.2d 377, 390-391:
> We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. . . This court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, but also in all types of cases where administrative . . . actions were under scrutiny.

 In *Shanko*, *supra*, which involved an administrative hearing re a building permit, Judge Tigar wrote at 1065-106:

> Plaintiff has pled facts plausibly alleging that he has not been given adequate process because he has alleged that the tribunal that reached the decision was not impartial. "A biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal." *Clements v. Airport Auth. of Washoe Cnty* (9th Cir.1995) 69 F.3d 321, 333.

Here, the BOPA was biased, and its impartiality was necessary exposed and compromised by it offering, before a decision was made,  a "settlement" proposal giving plaintiffs 15 days to allow a search of the barn. Doc. 28, p. 3 items 1, 12, and 13. There is no authority for such procedure and no permission was sought for this extraordinary action.

### J.  California Mandamus Relief

Under C.C.P. § 1094.5, plaintiff is entitled to pursue an administrative mandate claim to challenge the decision of the BOBA. Plaintiffs seek an order pursuant, under C.C.P. § 1094.5, compelling defendant to set aside the decision at the hearing and denial of the agricultural exempt permit, directing the appeal be granted and directing that the County issue the agriculture exempt permit. As alleged in the complaint, paragraph 39, said decision and action by the County through its BOBA and the PRMD are invalid under C.C.P. § 1094.5, for the following reasons:

a.  Defendant proceeded in excess of its jurisdiction, in that it made erroneous determinations of law, facts and acted in violation of plaintiffs' constitutional rights, civil rights, and rights to an agriculture exemption permit.

b.  Defendant failed to grant plaintiffs a fair meaningful hearing.

c.  Defendant committed a prejudicial abuse of discretion in that it misinterpreted and/or misapplied the County ordinance, failed to properly apply the law to the facts, and violated plaintiffs' constitutional rights.

d.  Defendant failed to proceed in the manner required by law because it issued the decision contrary to the substantial evidence and law before them and failed to afford plaintiffs due process.

e.  Defendant's decision is not supported by substantial evidence and contrary to law.

f.  Defendant proceeded in excess of its jurisdiction and prejudicially abused its discretion by failing to proceed in the manner required by law.

The right to a "fair trial" under C.C.P. § 1094.5, is greater than the due process requirement of the 14th Amendment, i.e., there is no need to show a liberty interest or property interest. As noted above, under the California Constitution there is a liberty interest in freedom from arbitrary adjudicative procedures in all adjudicatory hearings, even those that do not involve deprivation of property rights or liberty interests *People v. Ramirez* (1979) 25 Cal.3d 260, 268-69. In addition, as set forth above, in fact, federally protected  liberty and property deprivations also occurred.

*Clark v. City of Hermosa Beach* (1996) 48 Cal. App. 4th 1152 held that the fairness of land use procedures was to be measured under C.C.P. § 1094.5 rather than federal due process. In that case, the applicant whose land discretionary use permit was denied claimed that he did not receive a fair hearing. The court found no denial of federal due process, id. at p. 1170, but nonetheless there was a denial of a "fait hearing" as that term is interpreted for purposes of C.C.P. § 1094.5. See also *Nightlife Partners v. City of Beverly Hills* (2003) 108 Cal. App. 4th 81.Here, as noted above, even under federal due process standards, plaintiffs were denied a fair hearing.

Under California law, the BOBA abused its discretion. "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not

supported by the findings, or the findings are not supported by the evidence." *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34; C.C.P. § 1094.5 subdivision (b)'s "requirement of a "fair trial" means that there must have been 'a fair administrative hearing.' *Gonzalez v. Santa Clara County Dept. of Social* Services (2014) 223 Cal.App.4th 72, 96. Fair trial includes all types of constitutional due process standards and any procedural statutes or regulations are relevant. Here, for example, the failure to maintain and apply objective, written, ascertainable standards resulting in arbitrary and capricious administration of the hearing denied plaintiffs a "fair trial."

Here, since the underlying decision substantially affects a fundamental vested right  (the vested right to own and maintain the grandfathered use of the barn for support of the commercial ranching on the property) the independent judgment test applies. C.C.P. § 1094.5(b)-(c); *Goat Hill Tavern v City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525. Under the Independent Judgment standard, the court affords no deference to the factual assessments of the administrative fact finder. *Welch v. State Teachers' Retirement System* (2012) 203 Cal.App.4th 1.

As stated in *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515: "[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." Topanga applies to  review of denial of a building permit. As stated in *Gabric v. City of Rancho Palos Verdes* (1977) 73 C.A. 3d 183, 193.: "The same careful scrutiny by the trial court of the administrative agency's decision should apply where an agency has refused to issue a permit although the zoning law allows the intended use and where the conditions for the issuance of the permit have been met. Both of these considerations apply at bench." *Gabric* further noted at p.193: "it is the duty of the trial court vigorously to examine the record to determine not only if the findings support the decision of the city council but also to determine whether substantial evidence supports the "findings" of the city council. The absence of either establishes abuse of discretion."

Here, the County Code Article II section 7-13(B)(1) requires a written decision of BOBA: "Decisions of the local appeals board and housing appeals board shall be in writing…" PRJN.

However, as can be seen from Doc. 28, pp. 33-34 (the BOBA minutes) and the letter purporting to give notice of the "decision" (Doc. 28, pp. 35 and 37), there was never any written decision rendered by the board as required by the County's own Code, much less as required by law, as articulated in *Topanga*, *supra*. There is no finding whatsoever, and certainly none to bridge any sort of analytical fact. On this basis alone, there is prejudicial error as there can be no possible meaningful review of the decision.

This lack of any legally cognizable decision exemplifies the ad hoc and complete failure to have, maintain, or apply any objective, written or ascertainable standard for conducting the hearing, Indeed, the very "casual" means of conducting the BOBA hearing was rejected in *Topanga*, *supra*, 518: "The availability of careful judicial review may help conduce these boards to insure that all parties have an opportunity fully to present their evidence and arguments." If the agency's decision is arbitrary, capricious, unsupported, or procedurally unfair, a reversal is required. *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal. 4th 352. That is, before upholding a use permit decision, the reviewing court "must scrutinize the record and determine whether substantial evidence supports the administrative agency's findings and whether these findings support the agency's decision." *Topanga, supra* at 514*; Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, 149  (even the lesser substantial evidence test requires review of entire record). Here, defendant has failed to provide the Court  the necessary complete record (i.e. no hearing transcript is provided nor are plaintiffs' submissions) to scrutinize, so it cannot make any determination. Nor does defendant otherwise submit evidence to shift the burden onto plaintiff to respond under *Celotex*. Regardless, based on the defendant's partial record , the BOBA must be reversed because no  the "decision" was issued that contains findings required by *Topanga***.**

Also, manifestly for the reason set forth above, the BOBA acted in excess of jurisdiction when its action served to impose an unconstitutional condition upon plaintiffs' right to the exemption. *In Re Berry* (1968) 38 Cal. 2d 137, 147.

### K.  The BOBA Decision Was In Error As A Matter Of Law

Interpretation of the zoning and ordinances presents a question of law for independent review. *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668. The rules for the

1   construction of statutes apply equally to ordinances. *Welshans v. City of Santa Barbara* (1962)

2   205 Cal.App.2d 304, 308. The task is to determine the intent to effectuate the ordinances'

3   purposes. *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724. The words are

4   examined in the context, working to harmonize provisions relating to the same subject matter.

5   *Bruns, supra* at p. 724. The plain meaning of the ordinances is applied unless doing so would lead

6   to absurd results not intended. *Ibid.* If the ordinance's meanings are unclear, the court may

7   examine their underlying purposes and legislative history to help us determine the ordinance's

8   intent. *Bruns, supra* at p. 724. It may also "consider the impact of an interpretation on public

9   policy" and "the consequences that will flow from a particular interpretation." *Mejia v. Reed*

10  (2003) 31 Cal.4th 657, 663.

11          Here the ordinance is very clear on its face that the building inspection is to occur after

12  the exemption is issued and after the building is "completed". The timing of the inspection is

13  logically necessary after "completion" because until there is "completion" the inspector cannot

14  determine if complies with Section 7-7(d). For example, Section 7-7 allows for a "conversion" of

15  a building to agriculture use. Section 7-7 requires the issuance of the exemption prior to a

16  "conversion." So, if to be converted building was for commercial truck repair, there would

17  logically be trucks repair facilities in the building until the conversion was complete. Thus, if Mr.

18  Marquez saw multiple trucks in a building to be "converted" during a site evaluation, by the

19  County's absurd interpretation, an exemption could not issue. This would obviously defeat the

20  whole purpose of the ordinance by putting the cart before the horse.

21          Moreover, interpretation of Section 7-7 must not run afoul of inspection warrant

22  requirements and must be harmonized therewith. *Vidaurri, supra.* The BOBA denial cannot be

23  reconciled with the plain language of Section 7-7. As such, the Board committed clear error as a

24  matter of law and its decision must be reversed.

25  **L.  Objections To Defendants' "Evidence"**

26          Plaintiffs object to the follow "evidentiary" submission, Doc. 28 all referenced by page:

27  Page1:26-27 – legal conclusions, lack of foundation, hearsay and lack of personal knowledge.

28

**PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT/SUMMARY ADJUDICATION (ECF 27)**

Page 2:2-5 – legal conclusions, lack of foundation, hearsay and lack of personal knowledge, also disputed this the complete administrative record, missing is the transcript of the hearing and plaintiffs' submissions.

Page 2:17-19 – legal conclusions, lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion.

Pages 6-7 – legal conclusions, lack of foundation, hearsay and lack of personal knowledge.

Page 8 – first sentence of Response 3 as incomplete and taken out of context, that right to inspect does not apply prior to issuance of the exemption. The second sentence is also taken out of context, that right to inspect does not apply prior to issuance of the exemption- since "pursuant to law" requires a warrant under C.C.P. § 1822.50

Pages 20- 27 – legal conclusions, lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion

Page 28 (Ex H) first paragraph of the letter – legal conclusion lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion. The statement is disputed, Schmid never agreed to an interior inspection, he said he would open the doors and all that could be seen would be hay

Page 29 (I) – legal conclusions, lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion, speculation

Page 30 first paragraph of the letter – legal conclusion lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion. The statement is disputed, Schmid never agreed to an interior inspection, he said he would open the doors and all that could be seen would be hay

Page 32 (Ex K) – legal conclusions, lack of foundation, hearsay and lack of personal knowledge, legal conclusion, unqualified expert opinion.

**M. The Request for Sanctions is Specious**

In view of the forgoing law and facts, it is clear that the subject complaint is well founded in law and fact and the request for sanction is without any merit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  **CONCLUSION**

To the extent defendant's motion shifts the burden to plaintiffs, there are trial issues of facts to all claims. Clearly, plaintiffs met all requirements for the exemption, and as a matter of law the County had to issue it. Section 7-7 clearly and unequivocally provides for a rational scope and timing of the inspection after the issuance of the exemption and completion of the project allowed. Ignoring Section 7-7, the County demanded an inspection as a condition precedent to the exemption issuance. Again, this was like a teacher scoring a student's test before the student takes the test. The demand could not serve any logical purpose much less a legitimate government purpose. The demanded inspection is completely devoid of any nexus, much less logical nexus, to the issuance of the exemption, as the exemption issuance is for a planned future use of the building – not its present use. Regardless of what a pre-issuance inspection of the barn revealed, it could not serve as a basis to deny the exemption. The compliance of the building could only be determined after the issuance and the completion of the building and its use. Because there was no rational basis for any inspection, it is clear that plaintiffs had a Fourth Amendment right to object to the demanded warrantless search, as it was not reasonable as no cause exists for the inspection and the County proffers none. Further, the demanded inspection violated plaintiffs' Fourteenth Amendment's liberty and property right – the right to exclude. Also, the inspection demand violated plaintiffs' substantive due process right as it was arbitrary and capricious. Thus, the demanded search violated the unconstitutional condition doctrine. Because unquestionably, the unconstitutional demand for the inspection was policy of the County, the County is liable to plaintiffs under *Monell.*

Also, for reasons argued above, the County violated plaintiff state law and federal rights, including notably a denial of a "fair trial under both the federal and state constitutions.

In sum, the motion must be denied.

Respectfully submitted,

Dated: April 17, 2020          /s/ J. Curtis Edmondson

**PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT/SUMMARY ADJUDICATION (ECF 27)**