UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREAR STEPHEN SCHMID, et al.,

    Plaintiffs,

v.

COUNTY OF SONOMA,

    Defendant.

Case No. 19-cv-00883-JD

**ORDER RE SUMMARY JUDGMENT**

Re: Dkt. No. 27

Plaintiffs Frear Stephen Schmid and Astrid Schmid own 61 acres of land in the County of Sonoma (Sonoma), and got into a dispute with Sonoma officials about permits and inspections for work on their barn. They applied for a permit exemption under the Sonoma County Building Code for agricultural structures. Sonoma denied an exemption, and a permit appeals board upheld the denial. The Schmids allege that the denial was "unconstitutional" and contrary to law, Dkt. No. 1 ¶ 24, and sued Sonoma under 42 U.S.C. § 1983 (Section 1983) and California state law.

At an early case management conference, the parties agreed to stay the case pending a settlement conference before a magistrate judge. Dkt. No. 18. The case did not settle at the conference, Dkt. No. 23, and for clarity's sake, the stay is deemed lifted. Sonoma then filed a motion for summary judgment on all of the Schmids' claims. Dkt. No. 27.

Summary judgment is granted in favor of Sonoma on the Section 1983 claim. The Court declines to exercise supplemental jurisdiction over the remaining California state law claims, which are dismissed without prejudice.

**BACKGROUND**

The salient facts are straightforward and undisputed. Sonoma initially cited the Schmids in October 2000 for performing construction on their barn without a permit or exemption.

1    Administrative Record, Dkt. No. 28, Exh. A (AR) at 17-18.  The letter advising the Schmids of the

2    violation was sent to the wrong address, but the Schmids were also told orally of the need for a

3    permit or exemption by an inspector who was sent to investigate the premises shortly after the

4    letter was sent.  *See id.* at 19.  In June 2018, Sonoma issued a Notice & Order determining that no

5    permit had been issued for construction work on the barn, and directing the Schmids to take

6    corrective action within thirty days.[1]  *Id.* at 20.

In lieu of seeking a building permit for the construction, the Schmids chose to apply for an agricultural exemption from the permit requirement.  *See* Dkt. No. 32-1 (Schmid Decl.) at 4.  To see if they qualified for the exemption, Sonoma dispatched an inspector, who determined that the barn was being used to store vehicles rather than for agricultural purposes.  AR at 24; Schmid Decl. at 6.  The Schmids disagreed with this conclusion and told the inspector in an email that the vehicles were being used for agricultural purposes, and so the barn qualified for an agricultural exemption.  Schmid Decl., Exh. 3.  The inspector offered to conduct a second inspection.  Schmid Decl., Exh. 4.  The Schmids turned down the offer and said that an inspection was prohibited by the Fourth Amendment.  *Id.*  A few days later, the Schmids changed their minds and agreed over the telephone to open the barn for an inspection, with the comment that the inspector would see only "hay."  *Id.* at 7 & Exh. 6; *see also* AR at 27.

That turned out to be true in the sense that, when the inspector arrived, the entry to the barn was completely blocked by a wall of hay bales.  *See* AR at 28 (photograph); Schmid Decl. at 7 (referring to same).  The Schmids were advised that ingress into the barn was necessary for the inspection, and that an exemption would be denied if that were not allowed within approximately two weeks.  AR at 27.  The Schmids objected again to an inspection.  Schmid Decl., Exh, 6.

After the two weeks lapsed, Sonoma denied an exemption.  *See* Schmid Decl. at 7.  The Schmids appealed to the Sonoma Board of Building Appeals (Board), which held a hearing that lasted for more than two hours.  *See* AR at 14, 30-31.  During the hearing, Sonoma offered the

---

[1] Neither side has made an issue of the long gap between the initial citation and the 2018 notice and order.

Schmids another opportunity to schedule an inspection, which they refused. *Id.* at 30. The Board unanimously affirmed the denial of the exemption. *Id.* at 31.

## DISCUSSION

### I.   LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, a "party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party moving for summary judgment always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party also bears the ultimate burden of proof at trial, it can meet this initial burden by "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). When the moving party does not bear the ultimate burden of proof, it can meet its initial burden on summary judgment by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden of production has been met by the moving party, the burden then shifts to the nonmoving party to "produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also C.A.R.*, 213 F.3d at 480. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103 (citing *Celotex*, 477 U.S. at 322). Conversely, if the nonmoving party "produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Id.*

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. *Id.* at 248-49. To determine

3

whether there exists a genuine dispute as to any material fact, a court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *Id.* at 255. A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

In resolving a summary judgment motion, it is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotations omitted). Rather, it is entitled to rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." *Id.*; *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

"It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). "A verified complaint may be used as an opposing affidavit" to oppose summary judgment to the extent it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).

## II.   THE SECTION 1983 CLAIMS

The undisputed facts amply establish that Sonoma is entitled to summary judgment on the Section 1983 claim. "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). Local governments such as Sonoma are "persons" subject to liability under Section 1983 when an official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Wright v. City of Oakland*, No. 20-CV-07068-JD, 2021 WL 461892, at *1 (N.D. Cal. Feb. 9, 2021). A city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691.

1    The Schmids' single Section 1983 claim is premised on both the Fourth and Fourteenth Amendments. It is based principally on the theory that the Fourth Amendment was violated when Sonoma required an inspection of their barn.

"To prevail on a section 1983 claim based on the Fourth Amendment, a plaintiff must show that the state actor's conduct was an unreasonable search or seizure." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018). It is certainly true that an entry onto private property by the government without the owner's consent might qualify as a search under the Fourth Amendment. *See, e.g.*, *Fla. v. Jardines*, 569 U.S. 1, 5-6 (2013). But the record shows that nothing of the sort happened here. The Schmids consented to each visit by Sonoma inspectors to their property. *See, e.g.*, Schmid Decl. at 5 ("I unlocked the gate at the end of our driveway to allow access" to the inspector); *id.* at 7 (Schmids agreed to "open the barn doors" for inspector). The Schmids also consented to a "site evaluation" when filing for an exemption. AR at 6 (application); *see also* Schmid Decl., Exh. 2 at ECF p. 15 (Sonoma policy stating that site evaluations are conducted in part to "[v]erify that an agricultural use exists on the property"). There is no evidence that an inspector ever entered the property without permission. In addition, even assuming in the Schmids' favor that further permission to enter the barn were required, which is not clear as a legal matter, the wall of hay bales effectively prevented the inspector from walking into the structure. *See* AR at 27-28; Schmid Decl. at 7. No evidence shows that a government official entered the barn without the Schmids' consent.

The Schmids say that the Building Code allowed inspections of their property only after an exemption was issued. As an initial matter, it is unclear why this is relevant to the Fourth Amendment claim. "[I]t is not the province of the Fourth Amendment to enforce state law." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). The contention is further undermined by the fact that it is based on a strained reading of the Building Code. The Code requires an "inspection" after a structure is completed or improved to verify that it is "being used for the use stated" in an application for an agricultural exemption. Sonoma County Code § 7-7(d), Dkt. No. 29, Exh. A at

ECF p. 4;[2] *see also* Schmid Decl., Exh. 2. While the Building Code assumes that an exemption will be obtained before construction begins, and that an inspection will take place afterward to verify proper use, *see* Sonoma County Code § 7-7(b), (d), Dkt. No. 29, Exh. A at ECF pp. 3-4, the Schmids began construction first and applied for an exemption later. They point to nothing in the Building Code that requires Sonoma to issue an exemption for unauthorized work that has already taken place before it can verify a proper agricultural use for the structure. *See also* Schmid Decl., Exh. 2 at ECF p. 15 (Sonoma policy stating that property owner's letter attesting to agricultural use is sufficient evidence for exemption if use can be verified by inspection only "after" building is constructed).

These facts put to rest any Fourth Amendment concerns about the inspections, and the Schmids have not demonstrated otherwise. They rely heavily on cases holding that the government cannot condition the receipt of public benefits or the avoidance of a penalty on the surrender of a constitutional right. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). These cases involve circumstances entirely unrelated to those here, and so are readily distinguishable. The Schmids did not present any good reason to explain how they might apply to their claims, and the Supreme Court has held that a refusal to consent to an administrative inspection, when that does not trigger criminal penalties for non-compliance, may result in the denial of a government benefit without offending the Fourth Amendment. *See Wyman v. James*, 400 U.S. 309, 317-25 (1971) (upholding termination of welfare benefits for refusal to consent to home inspection on the grounds that the inspections are not Fourth Amendment searches or, alternatively, are not unreasonable); *see also Sanchez v. Cty. of San Diego*, 464 F.3d 916, 920-25 (9th Cir. 2006).

There is no evidence in the record that property owners faced criminal or similar penalties for declining to allow permit-related inspections by Sonoma officials. The main consequence was a denial of an exemption, which is not a penalty within the meaning of *Wyman*. *See* 400 U.S. at 317-18; *Sanchez*, 464 F.3d at 921 ("As in *Wyman*, the home visits are conducted with the

---

[2] The parties' unopposed requests that the Court take judicial notice of relevant provisions of the Sonoma County Code, Dkt. Nos. 29, 32-2, are granted.

6

1  applicant's consent, and if consent is denied, the visit will not occur. Also as in *Wyman*, there is
2  no penalty for refusing to consent to the home visit, other than denial of benefits."). The Schmids
3  faced potential corrective action measures for engaging in construction without first obtaining a
4  building permit or exemption. *See* AR at 20. But that was a consequence of their own making,
5  and not one flowing directly from denying an inspection. In addition, those measures would leave
6  the Schmids in the same position that they would have been in if they had never applied for the
7  exemption at all, *see Wyman*, 400 U.S. at 325, and there is no question that they could have
8  applied for a building permit to avoid undesirable outcomes under the permit rules. The record
9  also shows that the inspections "serve important governmental interests" in verifying proper land
10 use and eligibility for permit exemptions, were not conducted by uniformed police, and took place
11 only "with consent." *Sanchez*, 464 F.3d at 923-24 (holding these factors made home inspection
12 reasonable, even if it qualified as a Fourth Amendment search). Consequently, there was no
13 Fourth Amendment violation.[3]

14 The Schmids also attempt to support their Section 1983 claim with two Fourteenth
15 Amendment due process theories. They say that their substantive due process rights were violated
16 because the denial of their application for an agricultural exemption was arbitrary, and that their
17 procedural due process rights were violated because they were not given a meaningful opportunity
18 to present their case at the Board hearing.

19 These arguments are unavailing. To avoid summary judgment on a substantive due
20 process claim, the Schmids were required to establish that Sonoma's actions were arbitrary or
21 irrational because they failed to advance any "legitimate governmental purpose." *N. Pacifica LLC*
22 *v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008) (citing *Lingle v. Chevron U.S.A. Inc.*, 544

---

[3] Because this case does not involve a taking of the Schmids' property, the same reasoning disposes of their new argument that demanding an inspection of the barn offended their separate constitutional right as property owners to exclude others from the barn, Dkt. No. 32 at 11, a theory that was not mentioned in the complaint. *See Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (noting that Fourth Amendment protects right to exclude others from property); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51-52 (1993) ("the Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions," unless the government attempts to "assert ownership and control over the property itself" after a seizure).

7

U.S. 528, 542 (2005)). They did not do so. They say that the denial of an agricultural exemption was arbitrary or irrational because they "fulfilled all the conditions" for obtaining it, Dkt. No. 32 at 12, but the record shows otherwise. The Building Code expressly requires a person to obtain a building permit or exemption *before* engaging in construction. *See* Sonoma County Code § 7-5(a), Dkt. No. 29, Exh. A at ECF p. 5 (no person may "erect, construct, alter, repair, move, [or] improve" a "building or structure . . . without first obtaining a separate building permit for each such building or structure as required by this chapter"); Sonoma County Code § 7-7(b), Dkt. No. 29, Exh. A at ECF p. 3 ("Prior to the erection, construction, conversion, enlargement or major alteration of any building or structure situated on agricultural land," "a written application" for an exemption must be filed). The Schmids never obtained a building permit, and applied for an agricultural exemption only after performing construction on their barn. A Sonoma inspector determined that the barn was not being used for an agricultural purpose, and the Schmids refused to allow further inspections that might have shown otherwise. Consequently, the denial of the exemption was not arbitrary or irrational.

The procedural due process claim also lacks evidentiary support. "To be entitled to procedural due process, a party must show a liberty or property interest in the benefit for which protection is sought. If the party establishes that such an interest exists, a court determines what process was due and whether the party was actually afforded such process." *Buckingham v. Sec'y of U.S. Dep't of Agr.*, 603 F.3d 1073, 1081 (9th Cir. 2010) (citations omitted). The basic requirements for adequate due process are notice and "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

It is hardly debatable that the detailed provisions in the Building Code with respect to an exemption, coupled with the opportunity to be heard by the inspectors and then a permit appeals board, are generally in line with traditional notions of procedural due process. The Schmids make no serious effort to argue against that, and focus mainly on their dissatisfaction with the Board hearing.

8

The record again weighs firmly against the Schmids, and demonstrates that they received a meaningful opportunity to be heard. The appeals hearing went on for over two hours. *See* AR at 30-31. The Board members asked questions, the Schmids made a statement, and the Board debated an exemption. *Id.* at 30; Schmid Decl. at 7-8. During the hearing, Sonoma offered the Schmids another opportunity for an inspection, which they declined. AR at 30. The Schmids also submitted a written statement with attachments in advance of the hearing, which expressed their Fourth Amendment concerns. *See* Dkt. No. 1 ¶ 18-19; Schmid Decl. at 7. Only after all of that did the Board unanimously affirm the denial. *See* AR at 31; Schmid Decl. at 10; *cf. Cannara v. Nemeth*, 467 F. Supp. 3d 877, 884 (N.D. Cal. 2020) (parties received "reasonable notice and hearing" as required by statute because, even though no formal "evidentiary hearing" was conducted, there were "multiple opportunities for parties to be heard through written comments and in oral arguments," and parties received adequate notice). This was a full measure of notice and opportunity to be heard, and no procedural due process problems attach to it in any way.

The Schmids' complaint that they could not cross examine witnesses is of no moment. The appeals board was not a court of law, and nothing in the record suggests that the absence of cross examination meaningfully affected their ability to tell their side of the story in a manner not consonant with due process. *See Buckingham*, 149 F.3d at 1083-84. The Schmids say cross examination was necessary to point out inconsistencies in Sonoma's case and the inspector's testimony, but the evidence shows that they were afforded a full opportunity to make those points. *See* AR at 30; Schmid Decl at 7-8. The record does not indicate that the Schmids' views or concerns were stifled in any way.

The Schmids scattershot attacks on the integrity of the proceedings is also unsupported by genuine disputes of material fact. Nothing in the record indicates that the Board prejudged their case, had a personal or pecuniary interest in the outcome, or otherwise denied the Schmids a fair hearing by an impartial tribunal. *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995). There is also a presumption that the Board acted with honesty and integrity, which the Schmids have not rebutted. *Id.* The Schmids say that the Board was may have been biased against them over prior litigation, but that is wholly speculative and unsupported by any evidence. Their suggestion that a

9

sign of bias may be found in the offer to schedule another inspection is difficult to understand. Nothing in the record shows that the offer was anything other than a good-faith effort to take a fresh look at a possible exemption.

### III. STATE LAW CLAIMS

This resolves all the Schmids' federal claims in Sonoma's favor. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Rano v. Sipa Press*, 987 F.2d 580, 588 (9th Cir. 2003) (citing *Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 744 (9th Cir.1987), *cert. denied*, 488 U.S. 875 (1988)); 28 U.S.C. § 1367(c)(3).

### CONCLUSION

Summary judgment is granted to the County of Sonoma on claim one of the complaint. Claims two and three of the complaint are dismissed without prejudice. The parties' evidentiary objections are overruled to the extent the Court has relied on the evidence in question, and are otherwise terminated as moot. *See* Dkt. No. 32 at 23-24; Dkt. No. 33 at 7.

Sonoma's request to file a motion for attorney's fees under 42 U.S.C. § 1988 is denied. While Sonoma is entitled to summary judgment, the Court cannot say that the Schmids' claims were so "frivolous, unreasonable, or without foundation" as to warrant a potential award of attorney's fees. *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)); *see also Maag v. Wessler*, 993 F.2d 718, 721 (9th Cir. 1993) (citing *Christiansburg*, 434 U.S. at 421-22).

**IT IS SO ORDERED.**

Dated: March 24, 2021

JAMES DONATO
United States District Judge